HIRAM HITCHCOCK, as Executor, etc., of EDMUND R. PEASLEE, Deceased, Plaintiff, *v.* EDWARD H. PEASLEE, Appellant and Respondent; HIRAM HITCHCOCK and EDWARD H. PEASLEE, as Executors, etc., of MARTHA K. PEASLEE, Deceased, Defendants; FANNY M. PEASLEE, Respondent and Appellant.

*Will — security when required from the beneficiary for a fund to which others are contingently entitled — Statute of Limitations.*

A testator by his will provided as follows: "I give to my daughter Fanny M. Peaslee twenty thousand dollars in money or its equivalent in stocks, as my executor may decide, and twenty thousand dollars in trust, the same to revert at her death, if without issue, equally to my wife and my son."

In accordance with the judgment rendered in an action brought for the purpose of ascertaining the duty of the executor of such will in relation to the trust fund, the executor paid over the $20,000 to Fanny M. Peaslee, and she was directed by said judgment to safely and securely invest and hold the same for those entitled to the principal sum at her death; the judgment did not require her to give security, nor was any given.

She invested the money in stocks and bonds, and prior to the summer of 1880 lost the entire amount. Shortly thereafter she informed her mother and her brother of the loss, but no action was taken by either of them until the year 1892, when

a proceeding was instituted to compel a restitution of or security for the fund, in which it appeared that the testator's widow, who had subsequently died, had in her lifetime released her interest in the fund to her daughter.

*Held,* that the intent of the testator was to effectually dispose of this fund, and that Fanny M. Peaslee obtained a vested interest therein which would survive her and go to her issue, if any, and that upon her death without issue it would go to the wife and son of the testator if living, and in the event of the death of either of them the one-half in which the one so dying had a contingent interest would become the absolute property of the daughter;

That one-half of the fund became the absolute property of Fanny M. Peaslee upon the death of her mother, and that her mother's executors were not entitled to security therefor;

That the son of the testator was entitled to security for the other half of the fund;

That the non-interference of the *cestui que trust,* Edward, before his interest came into possession, did not constitute an assent on his part to the breach of the trust, nor did his knowledge of such breach and his inaction set the Statute of Limitations running.

CROSS-APPEALS by the defendant Edward H. Peaslee individually, and the defendant Fanny M. Peaslee, from portions of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of April, 1895, confirming the report of a referee and directing that security be given for a trust fund.

*William H. Arnoux* and *John R. MacArthur,* for Fanny M. Peaslee.

*Robert Hunter McGrath,* for Edward H. Peaslee.

O'BRIEN, J. :

Edmund R. Peaslee, the father of Edward H. and Fanny M. Peaslee, died in January, 1878, and the present litigation arises out of a provision of his will made for the testator's daughter, as follows : " I give to my daughter, Fanny M. Peaslee, twenty thousand dollars in money, or its equivalent in stocks, as my executor may decide, and twenty thousand dollars in trust, the same to revert at her death, if without issue, equally to my wife and my son."

An action was brought for the purpose of ascertaining the executor's duty relative to the trust fund, and it was therein adjudged that the executor should pay over $20,000 to the daughter, and she was directed safely and securely to invest and hold the same for those

entitled to the principal sum at her death. This judgment did not require her to give security, nor was any given. In 1879 or 1880 she invested this money in stocks and bonds in such manner that, prior to the summer of 1880, the entire amount was lost. Shortly thereafter she informed her mother and brother of the loss, but no action was taken by either of them until 1892, when this proceeding was begun to compel a restitution or security for the fund. The referee reported that the fund was entirely lost; that Edward H. Peaslee, individually, was entitled to security for one-half of the fund, to wit, $10,000, and that the executors of Mrs. Peaslee, who in the meantime had died, were not entitled to security for the other half, because upon her death the one-half to which she might have been entitled had she survived, became the absolute property of her daughter, and because in her lifetime she had released her interest to her daughter. The referee's report was confirmed and an order entered, which not conforming to the decision of the judge at Special Term, a motion to resettle it was made and granted, and it is from this resettled order that the present appeals are taken. Edward H. Peaslee appeals from so much of the order as holds in effect that any interest which he may have in the fund in question is contingent upon his surviving his sister. Fanny M. Peaslee appeals from so much of the order as holds that Edward has any interest whatsoever in the fund, and that she should give any security whatsoever.

The referee's conclusion, which was assented to by the Special Term, was that as the reversion was "equally to my wife and my son," without the addition of words of survivorship, legal repre_ sentatives, or other like words, the interest which would have belonged to Mrs. Peaslee, had she survived, became upon her death the absolute property of her daughter, freed from the trust. This construction, it is claimed, was erroneous, it being insisted that the provision in the will in question created a vested interest in the son Edward which, on the death of his sister without issue, would be payable to him, or, if he died during the lifetime of the sister, the same would go, should she die without issue, to his legal representatives; and that, even though the interest of Edward would be defeated by his death during the lifetime of his sister, this defeated interest would not pass to her, but would form part of the residuary

estate of the testator. On the other hand, it is claimed that the true legal effect of the bequest was to create a vested estate in the daughter, subject to being divested in favor of her mother and brother, should they survive her, and should she die without issue. This latter was the view taken by the referee and by the learned judge at Special Term, and, for reasons that may be briefly stated, we think should be sustained.

It is true that the testator, in connection with this bequest, used the word "trust," but when we come to read the entire clause it will be found that the essential elements of a legal trust, viz., an expressly designated *cestui que trust*, and an express purpose, object and terms of trust, are all wanting. Eliminating the idea of a legal trust, or that the daughter was a trustee, strictly speaking, we are by easy steps led to the conclusion, either that a vested interest was created in the daughter, subject to being divested in favor of her mother and brother by the happening of the contingency of her death without issue, or that a vested interest in the wife and son was created, subject only to the life interest of the daughter in the contingency of her leaving issue surviving her. Upon the question as to which of these constructions is right this controversy hinges.

The language used makes the interest of the wife and son expressly contingent upon the daughter's dying without issue, and it is only in this latter event that it is to revert to them equally. It is not provided that upon the death of either the wife or son their interest should go to their legal representatives; and if we can reach the conclusion that it was the testator's intention effectually to dispose by this provision of the $20,000, and not to have it become part of the residuary estate, we must construe his language with a view to effectuating such intention. We think, from the language used, that the fair intent was effectually to dispose of this fund, and that the daughter was to have a vested interest therein which should survive her and go to her issue, if any ; and upon her death without issue, that it should go to the wife and son of the testator if living, and that in the event of either of them dying, the one-half in which the one so dying had a contingent interest should become the absolute property of the daughter.

There is nothing in this view which contravenes the Revised Statutes defining estates, for while it is therein provided that an

estate is vested when there is some person in being who would have an immediate right to possession upon the ceasing of the precedent estate — which in one view might look as though the estate of Edward was vested — this provision is to be taken in connection with the one immediately following, which defines what are meant by contingent estates, and it is therein provided that " they are contingent whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain." (1 R. S. 723, § 13.)

Until the death of the daughter without issue it cannot be determined whether the others will come into possession of the estate or not, and so long as that contingency exists the interest is in expectancy, which may or may not ripen into fruition. Without referring to or analyzing the various authorities presented by the respective counsel, and repeating what has been so often said, that in the construction of wills cases directly controlling are difficult to find, because in each instance the language under construction is different, and, therefore, the value of the case as an authority is wanting, it will suffice to say that upon an examination of the cases we find nothing inconsistent with the view taken by the referee, and at which we have arrived, that the language used by the testator means that by the devise in question the daughter took a vested estate in fee, subject to being divested upon a certain contingency, and that Edward and the mother took contingent remainders.

The argument made, that this contingent interest of Edward was barred by the Statute of Limitations or by estoppel, is without force. It is true that twelve years before bringing this action he was aware that she had lost the fund, and that with such knowledge he remained passive during that period, justifying his conduct by the statement that his sister was irresponsible, and that any proceeding against her would result in no benefit. Were this a case of a cause of action arising in favor of Edward which accrued at a certain time, and which he had neglected to prosecute, then undoubtedly the statute would run. Here, however, the sister had the possession and custody of the fund, and this she had a right to have until the contingency happened which would transfer it and make it the property of another. As already shown, had both mother and brother died she would have been absolutely entitled to the whole fund ; and the referee was right in his conclusion that the non-inter-

ference of the *cestui que trust* before his interest comes into posses-
sion does not constitute an assent to the breach of the trust, nor does
his knowledge and inaction set the Statute of Limitations running.
The daughter was directed by the judgment which gave her possession
of the property to keep it safely until the final determination of
the persons to whom it should go, and this obligation resting upon
her was continuous and would remain until that time arrived. The
right to insist that she should at all times have the fund did not,
strictly speaking, constitute a cause of action in favor of those who
might eventually become entitled to such fund which must be
prosecuted as soon as knowledge that the fund was dissipated was
brought home to them, because all the rights of the parties and the
duties devolving upon the daughter were fixed by the judgment
under which she obtained possession; and being, therefore, obliged
to have the fund, it was proper at any period, until the contingency
happened when it should go to others, for such others as might be
interested, upon obtaining knowledge that the fund had been dissi-
pated, to apply to the court with a view of compelling the daughter
to comply with the terms of the judgment in respect to safely keep-
ing the fund.

Without discussing the subsidiary questions we think that the
order appealed from was right and should be affirmed.

PARKER, J., concurred; VAN BRUNT, P. J., concurred in result.

Order affirmed, without costs.